The Chancellor.
The complainant is a director and stockholder in the Perry Patent Arm Company. He exhibits his bill under the act of the legislature entitled, “An act to prevent frauds by incorporated conrpanies,” and prays that the company may be declared insolvent, receivers appointed, and the corporation be subjected to-the provisions of the act referred to. Notice was given to the directors of the company of this application. They have been heard by counsel, and resist the appointment of receivers.
The insolvency of the company is not denied. The only question is, whether receivers shall be appointed? The appointment of receivers is not a matter of course following upon a decree of the court declaring the company insolvent. It is a matter resting in the discretion of the Chancellor. Such was the decision of the court in Oakley v. Paterson Bank, 1 Green’s Ch. Rep. 173; and in a *127 late ease in this court of Rawnsley et al. v. The Trenton Mutual Ins. Co., 1 Stockton’s Ch. Rep. 347, a decree was made, by which the affairs of the company were left in the hands of the directors, and they compelled, from time to time, to report to the court, and be subject to the same supervision and control of the court as would govern receivers. But as a general rule, where a corporation is declared insolvent under the act, receivers will be appointed. The court will not leave the management of the affairs of the corporation in the hands of the directors, unless it is shown to be for the interest of the creditors and stockholders that this should be done.
The motion in this ease is resisted on several grounds.
1. It appears that there are several judgments in the Circuit Court of the county of Essex against this company, and that the judgment creditors are proceeding under the act entitled, “ An act to prevent fraudulent trusts and assignments.” These creditors have obtained from the Circuit Court an order to prevent the disposal of certain property, which is alleged to bo held in trust for the company. The president of the company has been examined touching the disposition of the property, and an application has been made for an appointment of a receiver under the act. It is insisted that the proceedings in the Circuit Court supersede the necessity of this court’s appointing receivers, and that such appointment would be an interference with the jurisdiction of the Circuit Court which has first attached. I cannot see the least force in the objection. The object of the act of 1850, referred to, is simply to enable a judgment and execution creditor to reach the property of his debtor, which has been fraudulently disposed of by him. The act of 1846 is applicable to corporations only; and its object is to secure to creditors of an insolvent corporation an equal distribution of its property. The proceedings in the Circuit Court make out a prima fade case against the propriety of leaving the further management of the affairs of the company in the *128 hands of the directors; for those proceedings have been instituted and prosecuted upon the assumption that the directors have fraudulently disposed of some of the property of the corporation.
2. The appointment of receivers is further resisted on the ground, that it appears, by affidavits before the court, that the company has no property of any kind; and it is said the appointment of receivers is therefore useless. If there is no property, the appointment of receivers can injure no one.
But the affidavits which are before the court show very cogent reasons for placing this corporation in the hands of officers of this court. This corporation has been insolvent for some time past, and it is apparent that when its insolvency was well known to the directors it was in possession of considerable property. It was the duty of the directors, within ten days after the company became insolvent, to call a public meeting of its stockholders, and to lay before them, for inspection and examination, all the books of account, by-laws, and minutes of the said corporation, and to exhibit to the said meeting a full and true statement of all the estate, funds, and property of the said company, and of all the debts due and owing to the said company, &c., so as to exhibit to the stockholders a full, fair, and true account of the situation of the affairs of the company. Nix. Dig. 345, § 1. And by the second section of the same act, it is made unlawful for the directors, after the company shall become insolvent, or for any of its officers or agents, to sell, assign, or transfer any of the property of the said company.
And yet, after the insolvency of the company was beyond dispute, and well known to all the directors, sixty rifles, worth $1500 at least, were sold to the president of the company to pay a precedent debt of his own of $1000. A large number of rifles were sold to one of the directors, to pay hima precedent debt. The patent right for Europe, which had cost fourteen hundred dollars for the *129 sole purpose of obtaining the patent there, was sold to another director for $1500; and the balance of the property, consisting of all its personal property, machinery, rifles, &c., were sold under execution, and purchased by another director. The legality of sales made under such circumstances ought to be investigated. They are in violation of the letter and spirit of the second section of the act, which expressly declares such sales unlawful. These sales and disposition of the property cannot he investigated, unless receivers are appointed. A ease, such as is made out here, leaves no discretion with the court, as to whether receivers shall he appointed — it is a matter of duty.
I shall, therefore, direct the order to he made.